IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 21-cv-00291-RM-MEH

JEREMIAH AXTELL,

    Plaintiff,

v.

CITY OF LAKEWOOD, et al.,

    Defendants.

---

# ORDER

---

    Plaintiff filed this lawsuit following an encounter with police and paramedics that resulted in his being arrested and injected with ketamine. He asserts claims against thirteen Defendants stemming primarily from the alleged application of excessive force. Before the Court is the Recommendation of United States Magistrate Judge Michael E. Hegarty (ECF No. 186) to grant each of the four Motions to Dismiss filed by various groups of Defendants (ECF Nos. 145, 148, 149, 155) and another Recommendation (ECF No. 218) to deny Plaintiff's Motion to Amend (ECF No. 200). Plaintiff has filed an Objection to the first Recommendation (ECF No. 201), and certain Defendants have filed Responses to the Objection (ECF Nos. 203, 204, 206). Plaintiff has not objected to the second Recommendation. For the reasons below, the Court overrules Plaintiff's Objection and adopts both Recommendations.

## I. LEGAL STANDARDS

### A. Treatment of a Pro Se Plaintiff's Pleadings

The Court liberally construes Plaintiff's pro se pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But a pro se plaintiff must follow the same rules of procedure that govern other litigants, and the Court does not supply additional factual allegations to round out a complaint or construct legal theories on his behalf. *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). The Court may excuse a pro se plaintiff's failure to cite proper legal authority, confusion about various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements, but it does not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. Review of a Magistrate Judge's Recommendation

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

### C. Fed. R. Civ. P. 12(b)(6)

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers'*

2

*Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

### D. Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018); *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Id.* (quotation omitted).

### E. Municipal Liability

To state a claim for municipal liability, a plaintiff must demonstrate the existence of a

3

municipal policy or custom, a direct causal link between the policy or custom and the injury alleged, and deliberate indifference by the municipality. *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2019). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

## II.     BACKGROUND

Plaintiff did not object to the magistrate judge's summary of the factual allegations in the Second Amended Complaint (ECF No. 134), which is incorporated into this Order by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). For present purposes, the Court summarizes the relevant allegations as follows. Plaintiff and his girlfriend, a member of the Lakewood City Council, were not on good terms with the employees of a group home in the residential neighborhood where his girlfriend lived. (ECF No. 134, ¶¶ 17-20.) One morning, they asked the employees to pick up an adult diaper that was in the road, which led to further exchanges and prompted one of the employees to call the police. (*Id.* at ¶¶ 20-24.) The employee reported that Plaintiff was "charging" the group home and had said he had a knife. (*Id.* at ¶ 25.)

When the police arrived at the group home, Defendant Palomo conducted a pat-down of Plaintiff and found no weapons. (*Id.* at ¶¶ 26, 31.) Defendant Palomo followed Plaintiff onto his girlfriend's property and then "pushed him, searched him, and used excessive force causing injury to [him]." (*Id.* at 32.) When Defendant Deloen arrived, she briefly pointed a taser at Plaintiff before putting it back in its holster. (*Id.* at ¶¶ 35, 37.) As Plaintiff's girlfriend began

recording the incident on her phone, Plaintiff "sat down, and then laid down spread eagle, on the driveway so as to appear unthreatening and submissive to officers and to diffuse the situation." (*Id.* at ¶¶ 37, 40.)  The officers then "forced him to a seated position, and forcefully and painfully handcuffed him behind his back." (*Id.* at ¶ 41.)  Defendant Deleon put a knee into Plaintiff's spine to effect a "twist lock" and at one point "purposely pulled Plaintiff's left arm backwards and up so as to cause great pain." (*Id.* at ¶¶ 44.)  Plaintiff admitted that he had consumed alcohol the night before while the officers stood around him for about forty-five minutes. (*Id.* at ¶¶ 43, 50.)  Because of this admission, Plaintiff was arrested for violating a protection order, even though it "was no longer active." (*Id.* at ¶ 50.)

At some point, the paramedics were called, and they arrived about twenty-five minutes after Plaintiff was initially seized. (*Id.* at ¶¶ 39, 51.)  After a brief trauma assessment, Defendant Onstott determined Plaintiff was "verbally aggressive and was still physically aggressive despite being in handcuffs." (*Id.* at ¶ 57.)  Defendant Onstott further determined that Plaintiff was in "excited delirium," warranting an injection of 450 mg of ketamine. (*Id.*)  Defendant Onstott administered the injection, when rendered Plaintiff unconscious, and he was taken by ambulance to St. Anthony's Hospital, where he received four additional sedating medications over the course of an hour. (*Id.* at ¶¶ 57, 75, 79, 102.)  Later that day, Plaintiff was transported to Jefferson County Jail. (*Id.* at ¶ 176.)  He was charged with two counts of felony menacing as well as five other charges stemming from the episode. (*Id.* at ¶ 189.)

In his Second Amended Complaint, Plaintiff asserts eight claims for relief under 42 U.S.C. § 1983 and state law against thirteen Defendants for their purported roles in his arrest and involuntary injection.  He asserts claims for (1) excessive force resulting in permanent injury

5

in violation of the Fourth Amendment; (2) failure to ensure basic and safety and provide adequate medical care and treatment in violation of the Fourteenth Amendment; (3) failure to train, screen, and supervise under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (4) unlawful arrest and false imprisonment in violation of the Fourth Amendment; and (5) malicious prosecution and abuse of process in violation of the Fifth Amendment against Defendants Palomo, Deleon, Bates, Simpson, and McCasky, members of the Lakewood Police Department, and Defendant City of Lakewood (the "Lakewood Defendants").

Plaintiff asserts claims for (1) excessive force in violation of the Fourth Amendment; (2) deprivation of liberty and forcible administration of medication in violation of the Fourteenth Amendment; (3) failure to ensure basic and safety and provide adequate medical care and treatment in violation of the Fourteenth Amendment; (4) failure to train, screen, and supervise under *Monell*; and (5) medical negligence under Colorado law against Defendants Onstott, Herrera, and Lombardi, employees of Defendant West Metro Fire Rescue Protection District, as well as the District itself (the "West Metro Defendants").

Plaintiff asserts claims for (1) deprivation of liberty and forcible administration of medication in violation of the Fourteenth Amendment; (2) failure to ensure basic and safety and provide adequate medical care and treatment in violation of the Fourteenth Amendment; and (3) medical negligence under Colorado law against Defendants Vellman and Richter, co-medical directors of pre-hospital services at St. Anthony's Hospital/Centura (the "Doctor Defendants), premised on their roles in obtaining the waiver that allowed paramedics to administer ketamine in a pre-hospital setting.

Plaintiff asserts claims for (1) failure to ensure basic and safety and provide adequate

6

medical care and treatment in violation of the Fourteenth Amendment and (2) medical negligence under Colorado law against Defendant Schad, an assistant to Defendant Vellman.

Defendants filed Motions to Dismiss that were referred to the magistrate judge for a Recommendation. After the Motions were fully briefed, the magistrate judge recommended that they all be granted. Plaintiff then filed a Motion for Leave to Amend the Second Amended Complaint, which was also referred to the magistrate judge. He recommends denying it.

### III.     MOTIONS TO DISMISS

The Court provides a summary of the magistrate judge's conclusions and analysis and then addresses Plaintiff's Objection.

#### A.     Fourth Amendment

The magistrate judge began with Plaintiff's claims asserting excessive force, applying the reasonableness standard for Fourth Amendment claims. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[*A*]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

##### 1.     Lakewood Defendants

With respect to the Lakewood Defendants, the magistrate judge determined that because Plaintiff was charged with felony menacing, a severe crime was at issue. The magistrate judge also determined that given the accusations made against Plaintiff (i.e., that he was "charging" the group home and had stated that he had a knife) as well as his conduct after the officers contacted him (including his attempt to avoid further engagement by retreating to his girlfriend's house), the responding officers had reason to believe he posed a threat to their safety or the safety of

others and that he was attempting to evade arrest by flight. Accordingly, the magistrate judge determined that "[i]n light of the totality of the circumstances in this matter, the alleged direct use of force is minimal." (ECF No. 186 at 13.) Thus, the allegations that Defendant Palomo pushed Plaintiff and that Defendant Deleon briefly pointed a taser at him were insufficient to sustain an excessive force claim. (ECF No. 186 at 13-14.) Moreover, there were no supporting allegations linking Defendant Bates to the alleged use of excessive force. (*Id.* at 17.)

As for the Lakewood Defendants' alleged use of indirect force in causing the ketamine injection, the magistrate judge determined that Plaintiff's allegations were too conclusory to support a finding of liability. Defendant McCaskey was not even alleged to have been on the scene, and there were no allegations establishing that Defendant Bates was aware of the ketamine injection or had an opportunity to intervene in its administration. Although Defendant Palomo was alleged to have had knowledge about the ketamine injection, there were no allegations showing he had reason to know that administering ketamine would violate Plaintiff's rights under the circumstances. Nor did Plaintiff cite any clearly established authority for the proposition that officers could held liable for unduly influencing paramedics to administer ketamine.

As for the unlawful seizure claim against the Lakewood Defendants, the magistrate judge concluded that reasonable officers responding to the scene would have arguable probable cause to arrest Plaintiff, either for violating the protection order (even if it was no longer valid) or for felony menacing. "A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quotation omitted); *see id.* ("Arguable probable cause is

another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."). As a result, Plaintiff failed to state an unlawful seizure claim against them.

Therefore, the magistrate judge found the individual Lakewood Defendants were entitled qualified immunity on the Fourth Amendment claims asserted against them—both for lack of sufficient allegations to show an underlying constitutional violation and for lack of clearly established law that would have advised these Defendants that what they were doing would violate Plaintiff's Fourth Amendment rights.

### 2. West Metro Defendants

With respect to the West Metro Defendants, the magistrate judge found that the "excessive force" claims against Defendants Herrera and Lombardi must be dismissed because of the lack of any plausible allegations as to how they personally participated in the administration of ketamine to Plaintiff. As for Defendant Onstott, who did administer the ketamine, the magistrate judge determined there was no clearly established law that would have put him on notice that his conduct would violate Plaintiff's constitutional rights. Because the allegations showed that he "exercised some modicum of medical judgment in administering the ketamine after Plaintiff had been restrained" (ECF No. 186 at 25), Plaintiff's theory that Defendant Onstott acted as a law enforcement official lacked merit. The magistrate judge further noted the absence of factual allegations that Defendant Onstott was ordered to act—or did in fact act—at the behest of law enforcement rather than on the basis of perceived medical need. In the absence of clearly established authority that a paramedic could be held liable in similar circumstances, the magistrate judge concluded Defendant Onstott, too, was entitled to qualified

immunity.

### B.      Fourteenth Amendment

#### 1.      Lakewood Defendants

The magistrate judge characterized Plaintiff's Fourteenth Amendment claims against the Lakewood Defendants as "denial of medical treatment" claims, requiring allegations establishing deliberate indifference to his serious medical needs. Such claims have an objective and subjective component, requiring the plaintiff to demonstrate a sufficiently serious need and that the defendant knew he faced a substantial risk of harm and disregarded that risk. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). A complaint that a physician has been negligent in diagnosing or treating a medical condition, however, is not sufficient to meet the "deliberate indifference" standard. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

The magistrate judge concluded that Plaintiff's allegations satisfied neither component above. That is, they did not show that his injection with ketamine created a serious medical need or that any of the Lakewood Defendants were aware of a substantial risk of serious harm to Plaintiff. Nor did Plaintiff cite any authority clearly establishing that officers responding to a call could be liable for deliberate indifference for simply calling paramedics to the scene. Thus, the Lakewood Defendants were entitled to qualified immunity on these claims.

#### 2.      West Metro Defendants

The magistrate judge characterized Plaintiff's Fourteenth Amendment claims against the West Metro Defendants as substantive due process claims for forcible administration of ketamine and for failure to ensure basic safety and provide adequate medical care and treatment. Applying the same "deliberate indifference" standard as above, the magistrate judge determined that even

if Plaintiff's allegations established that Defendant Onstott acted negligently, "they do not plausibly allege that he knew Plaintiff faced a substantial risk of harm and disregarded that risk." (ECF No. 186 at 30.)  Thus, Defendant Onstott was entitled to qualified immunity.  And the magistrate judge again found that Plaintiff failed to state a claim against Defendants Herrera and Lombardi because of the lack of any plausible allegations as to how they personally participated in administering ketamine to Plaintiff.

### 3. Doctor Defendants

As a threshold matter, the magistrate judge determined that the Doctor Defendants were eligible for qualified immunity because they were engaged in a traditional function of government in their roles as medical directors.  The magistrate judge then concluded they were not subject to individual liability because they were not present at the time Plaintiff was injected with ketamine and therefore did not personally participate in the alleged constitutional violation.  The magistrate judge considered but rejected the possibility that the Doctor Defendants might be liable under a theory of municipal liability, citing that absence of any such claim in the Second Amended Complaint.

### 4. Defendant Schad

Plaintiff's claims against Defendant Schad are premised on her role as an employee at St. Anthony's Hospital and assistant to Defendant Vellman.  Plaintiff alleges that she "rubberstamp[ed] the approval of [Plaintiff's] ketamine administration after the fact."  (ECF No. 134, ¶ 174.)  However, the magistrate judge concluded that Defendant Schad—who did not assert a qualified immunity defense—could not be considered a state actor for § 1983 purposes based on the allegations in the Second Amended Complaint.  Further, Plaintiff did not plead

Defendant Schad's personal participation in the administration of ketamine. Therefore, he failed to state a claim against her.

### C.  *Monell* Liability

The magistrate judge determined that Plaintiff failed to state a municipal liability claim against Defendant City of Lakewood due to the absence of an underlying constitutional violation by the individual Lakewood Defendants.

As for Defendant West Metro Fire Protection District, the magistrate judge concluded that even if Plaintiff had established an underlying violation, he had failed to plausibly plead the existence of a municipal policy or custom that was the moving force behind the violation. The magistrate judge noted the lack of plausible allegations demonstrating a widespread policy or custom at the District, finding Plaintiff's reliance on instances of improper ketamine administration from other cities and agencies inapposite. Plaintiff failed to plead multiple instances of ketamine being improperly administered to support the existence of an informal policy. Indeed, aside from Defendant Onstott's administration of ketamine to Plaintiff, the Second Amended Complaint alleges no other instances of ketamine being administered by Defendant Onstott or any other employee of the District. (*See* ECF No. 186 at 39 ("Beyond conclusory allegations, Plaintiff has not alleged a similar 'systematic problem' here.").) The magistrate judge also found Plaintiff's allegations regarding inadequate training and failure to discipline were largely conclusory and failed to demonstrate a widespread policy or custom. Therefore, he failed to state a *Monell* claim against the District.

### D.  Malicious Prosecution

Having already determined that the Lakewood Defendants had arguable probable cause

to arrest Plaintiff, the magistrate judge concluded that Plaintiff could not establish a necessary element of a malicious prosecution claim—the absence of probable cause supporting an arrest, continued confinement, or prosecution. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1294 (10th Cir. 2004) ("The probable cause requirement is central to the common law tort, because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable."). Nor was Plaintiff's single substantive allegation regarding Defendant Simpson sufficient to plausibly allege the absence of probable cause. Thus, the magistrate judge recommended dismissing these claims as well.

### E. Medical Negligence

To establish a medical negligence claim under Colorado law, "the plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury." *Day v. Johnson*, 255 P.3d 1064, 1068-69 (Colo. 2011) (en banc).

The magistrate judge found that the Plaintiff's claim against the West Metro Defendants was barred by the Colorado Governmental Immunity Act, which immunizes public entities from liability in all claims for injury which lie in tort or could lie in tort. The magistrate judge found that Plaintiff failed to state a claim against the Doctor Defendants because he did not plausibly plead the existence of a physician-patient relationship, and therefore these Defendants owed Plaintiff no duty. And the magistrate judge found that Plaintiff failed to state a claim against Defendant Schad, whose position was analogous to that of a receptionist who does not provide medical care, and therefore she could not be held liable on a medical negligence theory. Indeed, the magistrate judge stated that this claim "borders on frivolous." (ECF No. 186 at 46.)

### F. Plaintiff's Objection

Plaintiff does not attempt a point-by-point rebuttal of the Recommendation. The Court addresses his arguments roughly in the order presented.

First, Plaintiff's contention that disputed issues of material fact preclude the dismissal of his claims misses the mark. Defendants' Motions to Dismiss focus on the adequacy of the allegations in the Second Amended Complaint, and Plaintiff has not shown that the magistrate judge failed to accept those factual allegations as true in making the Recommendation. Further, it is not Court's role to consider additional evidence, such as the video files Plaintiff submitted with his Objection, at this stage. Rather, the Court's review is limited to Plaintiff's specific objections to the Recommendation.

Second, Plaintiff objects to the dismissal of many of his claims on qualified immunity grounds, arguing that "the idea that there must be a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains . . . is an impossible standard." (ECF No. 201, ¶ 9.) But the Court is not at liberty to disregard well-established legal principles such as the requisite proof of clearly established law in qualified immunity cases, and Plaintiff has not shown that the magistrate judge applied an incorrect standard.

Third, Plaintiff's insistence that he was not in "excited delirium" at the time of his arrest is unavailing. The magistrate judge did not need to determine this issue to resolve the Motions to Dismiss. Even if Plaintiff's assertion is correct, Plaintiff offers no authority for the proposition that Defendant Onstott's assessment that Plaintiff was in excited delirium precluded the Lakewood Defendants from charging him with any crimes under the circumstances of this case.

Fourth, Plaintiff's allegations that the proper protocols were not followed, even if true, do not rise to the level of showing a violation of his rights. Put differently, Defendant Onstott's alleged failure to follow the proper protocols does not mean he is not entitled to qualified immunity. And Plaintiff cites no authority for the proposition that failing to follow the proper protocols equates to practicing medicine without a license, as he asserts repeatedly. Similarly, the fact that Plaintiff was already restrained by handcuffs when ketamine was administered does not establish that his constitutional rights were violated. Plaintiff cites no authority to the contrary, and he has not shown that the magistrate judge erred by concluding that he failed to plausibly allege a violation of his rights.

Fifth, Plaintiff's contention that he was given ketamine for law enforcement purposes as opposed to medical reasons is entirely speculative and lacks factual support; therefore, the magistrate judge did not err by failing to accept his conclusory allegations on this point.

Sixth, Plaintiff's reliance on arguments made in other cases and Colorado's subsequent banning of the use of ketamine is misplaced here. The magistrate judge properly noted that the relevant inquiry for qualified immunity purposes is whether the law at the time of the incident is clearly established. (*See* ECF No. 186 at 20-21 (citing *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020).)

Seventh, Plaintiff's reliance on certain statistics regarding the use of ketamine by the District as compared to other cities and entities is unavailing. Plaintiff does not provide enough context to allow for an apples-to-apples comparison that might make such allegations relevant, and the magistrate judge properly disregarded them. (*See id.* at 37 ("Those other instances do not, though, involve West Metro or any policy or custom it may have.").)

15

Plaintiff's remaining arguments appear to rely on allegations that are not in the Second Amended Complaint or are too underdeveloped to support a finding that the magistrate judge erred in his analysis of the Motions to Dismiss. With respect to the findings and conclusions of the magistrate judge's forty-seven-page Recommendation on the Motions to Dismiss to which Plaintiff did not object, the Court finds the magistrate judge's analysis was thorough and sound and discerns no material errors on the face of the record. *See Gallegos v. Smith*, 401 F. Supp. 3d 1352, 1356-57 (D.N.M. 2019) (applying deferential review of the magistrate judge's work in the absence of any objection).

For these reasons, the Court overrules Plaintiff's objection and accepts the Recommendation in its entirety.

**IV. MOTION TO AMEND**

The magistrate judge recommended denying Plaintiff's Motion to Amend for five reasons: (1) he failed to describe efforts to meaningfully confer on the Motion; (2) he did not attach a copy of his proposed Third Amended Complaint; (3) ineffective assistance of counsel is not a basis for relief from an adverse judgment in a civil case; (4) he has already had multiple attempts to cure pleading deficiencies; and (5) amendment would likely be futile. Plaintiff did not object to the Recommendation, and the Court agrees with the magistrate judge's assessment of the Motion.

**V. CONCLUSION**

Therefore, the Court ORDERS as follows:

(1) Plaintiff's Objection (ECF No. 201) is OVERRULED;

(2) the Recommendations (ECF Nos. 186, 218) are ACCEPTED and ADOPTED;

(3)     Defendants' Motions to Dismiss (ECF Nos. 145, 148, 149, 155) are GRANTED;

(4)     Plaintiff's Motion to Amend (ECF No. 200) is DENIED.

No claims remain, and the Clerk is directed to CLOSE this case.

DATED this 17th day of March, 2023.

                                      BY THE COURT:

                                      _____
                                      RAYMOND P. MOORE
                                      United States District Judge